NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—February, 1883.

## MATTER OF WOOD.

*In the matter of the estate of* FERNANDO WOOD, *deceased.*

Testator, by the first clause of his will, gave to his son, as trustee, $5,000, to be paid to him within 30 days after testator's death, and to be applied in defraying the current expenses of the household and family, including the personal expenses of the widow. By the second clause, he gave one fourth of the residue to a trustee, to collect the income and apply the same to the use of his widow for life, with remainder over;

and directed that, until his executors ascertained and paid over said fourth of the residue to the trustee, they should " pay over and advance to my said wife a sufficient sum per annum to *make up to her an annual income* of $3,000, such advances to be charged against and deducted from the share to be held in trust for her." These provisions were expressed to be in lieu of dower. She had a separate estate, yielding some income. The sum of $3,000 was ample for her annual maintenance.—

*Held,* that the testator did not intend that, in making up this annual income, there should be taken into account any income which might come to the widow apart from that furnished by the will.

Testator, by his will, gave a house and lot *and the sum of four thousand dollars,* to a trustee, to receive the income and profits, and, after paying thereout the annual charges against the premises (specifying them), to apply the remainder to the use of his sister for life, with remainder over, with the privilege to her to actually occupy the said premises, free of charge. The *cestui que trust* was over 60 years of age, without independent means, for whom testator had for years provided, and who in fact resided on the premises in question, testator having purchased the same as a home for her, on her selection. It appeared that the income of $4,000 was about sufficient to keep down the annual charges on these premises.—

*Held,* that interest began to run on the $4,000 from testator's death.

THIS was a judicial settlement of the account of Joseph L. R. Wood and Fernando Wood, as executors of decedent's will. Two questions were raised by the account, viz.:

1st. Whether the widow of the testator was entitled to an income *out of the personalty of the estate,* of $3,000 a year from testator's death, and until the ascertainment and payment over of one fourth of the residuary estate to the trustee named in the will.

2nd. Whether the executors should pay to the trustee of Albinia Baldwin interest on $4,000 *from the date of testator's death.* Portions of the will relevant to these inquiries read as follows:

" *First.* I give and bequeath unto my son Joseph L. R. Wood, the sum of five thousand dollars, to be paid to

him by my executors within thirty days after my decease, to be applied by him in defraying the current expenses of my household and my family as established at the time of my death (including the personal expenses of my wife, Alice M. Wood), the said provision and that hereinafter made for my said wife are to be received by her in lieu of dower and all other interest in my estate.

"*Second.* I hereby give, devise and bequeath the one undivided fourth part of my residuary estate hereinafter mentioned and referred to, after payment of my debts, including mortgages, taxes and assessments, and the legacies hereinafter contained, to the United States Trust Company of New York, in trust, upon the trusts following, that is to say: to receive, invest, and reinvest the same, to collect and receive the income thereon and to apply the net income thereof, to the use of my said wife during her natural life, and upon her death to divide and transfer the same among and to such of my children as shall be then living and the issue, etc., etc.

"And I direct that the said one fourth part of my residuary estate be paid over by my executors to the said Company as rapidly as may be consistent with the best interest of my estate, and as the same may be from time to time ascertained and realized; and until the ascertainment and payment over of said one fourth of my residuary estate, I direct my executors to pay over and advance to my said wife a sufficient sum per annum to make up to her an annual income of three thousand dollars, such advances to be charged against and deducted from the share to be held in trust for her as aforesaid. . . .

"*Third.* I hereby give and bequeath to my son Joseph L. R. Wood the house and lot in the city of New York

known as No. 325 West Twenty-seventh street, and the sum of four thousand dollars, in trust, to receive the income and profits thereof, and after paying out of said income and profits the annual taxes, croton water rents, and any assessments that may be imposed upon said premises and the cost of keeping the same in good repair and insured to at least the amount of $12,000, to apply the remainder of said income and profits to the use of my said sister Albinia during her life, and upon her death to sell the said house and lot at public or private sale, and to make and execute a good and sufficient deed therefor, and I hereby direct and provide that the proceeds of said sale and the sum of $4,000 shall fall into and be considered and distributed as part of my residuary estate herein provided for. I hereby direct that my said trustee permit my said sister Albinia to have the actual use and occupation of said house during the continuance of the said trust, if she desires such use and occupation, free of charge."

By the testimony of one of the executors, which was taken in the course of the proceedings, it appeared that, at the time of the execution of the will, testator's wife had a separate estate, and that the same yielded some income each year, from that time until testator's death; that testator's sister, Albinia, was an aged widow, without independent means of support, and whom testator had for years provided for; that the latter had, on her selection, purchased the house in Twenty-seventh street as a home for her, and had always paid all the charges against the premises, leaving her in undisturbed possession; and that the income of $4,000 was about sufficient to pay all the charges

against the premises.   It was conceded that an annual income of $3,000 was ample for the wants of the widow, and that more would be of no use to her.   The chief reason urged against immediate payment of interest on the $4,000 was that the provision, being a legacy, was not payable until a year after letters granted (2 R. S., 90, § 43).

A. H. STOIBER, *for the executors.*

Both of these questions (above stated) must be determined upon an interpretation of the will.

The answer to the former depends especially on the construction of the words "make up to her an annual income."   There are three views apparently consistent with the remainder of the will: 1st, that these words refer to the income from the widow's separate estate, as well as to that derived by her from the estate of testator; 2nd, that the words refer to the income from such portions of the one quarter as may, from time to time, be set apart to her, until the complete "ascertainment and payment over of said one fourth part; 3rd, that, in addition to the foregoing, the words refer to her interest or share in the $5,000 mentioned in the first clause of the will.

The second question is novel, no case in point having been found.   Cites Raven v. Waite (*1 Swanst., 553*); Lowndes v. Lowndes (*15 Ves., 301*); Beckford v. Tobin (*1 id., 308*); Cooke v. Meeker (*36 N. Y., 15*, and cases cited); Williamson v. Williamson (*6 Paige, 298*).   The provision for testator's sister is *not a legacy.*   He has constituted a trust of real property for her life, giving her the use or the income thereof, at her option, free of

charge; and has added to the trust a fund sufficient to pay all charges against the land, both land and fund merging in the residuary on her death. The charges beginning to run against the land on testator's death, interest should commence at the same time. In other words, the chief element of the trust is the house and lot; the $4,000 is a mere attendant fund, intended to provide for annual charges on the former, and should pass and be paid at the same moment as the trust takes effect.

JULIEN T. DAVIES, *for committee of Alice M. Wood, and for Albinia Baldwin.*

The testator obviously had in mind several sources of income for his wife. The language requires that she be paid some sum *as a difference* between $3,000 a year, and what she might receive from other sources. Testator intended that her separate estate should be taken into account in making up the $3,000. The other construction, which might unnecessarily diminish the principal of testator's estate, is to be avoided.

As to interest on the $4,000 fund:

1. When a sum is given as an annuity, an exception exists to the rule postponing interest on a legacy until a year after probate (*2 Roper on Legacies, 1245*). The application of this principle is not limited to legacies proper (Cooke v. Meeker, *36 N. Y., 15; 42 Barb., 533*). Cites Booth v. Ammerman (*4 Bradf., 129*); Eyre v. Golding (*5 Binn., 472*); Hilyard's Estate (*5 Watts & S., 30*); Fish's Estate (*19 Abb., 209*); Matter of Lynch (*52 How., 367, 375*).

2. The surrounding circumstances, attending the making of the will, show that testator's intent was that in-

terest on this sum should run from his death.   There is no rule of law restricting the application of this principle to infants to whom testator stood *in loco parentis.* In the case of such infants, the *presumption* is that interest accrues immediately (Wms. on Exec., *1426;* Brown v. Knapp, *79 N. Y., 136; In re* Richards, *L. R., 8 Eq., 119;* Chidgey v. Whitby, *41 L. J., Ch., 699*).   As, in the case of infants, this presumption may be rebutted by showing them not to be dependent on the provision (Rouse's Estate, *9 Hare, 649*), so the contrary presumption may be rebutted by showing special circumstances indicating testator's intent (Sullivan v. Winthrop, *1 Sumner, 1, 13, 14, 15;* Chisolm v. Chisolm, *4 Rich. Eq., 266;* Brock v. Sawyer, *39 N. H., 547;* McWilliams v. Falcon, *6 Jones Eq., 236;* Hart v. Williams, *77 N. C., 426;* Hennion's Ex'rs v. Jacobus, *12 C. E. Green, 28;* Welsh v. Brown, *14 Vroom, 40;* Lupton v. Lupton, *2 Johns. Ch., 614;* Wheeler v. Ruthven, *74 N. Y., 428;* Kerr v. Dougherty, *17 Hun, 341; 79 N. Y., 327*).   The case of Raven v. Waite (*1 Swanst., 553*) merely requires that, in the case of adults, the *nature of the provision* must show testator's intent that interest should begin to run at once.   Such is the nature of this provision.

THE SURROGATE.—The testator directed, in the second clause of his will, that his executors should pay over and advance to his wife "a sufficient sum per annum to make up to her an income of $3,000." These advances were to be continued until a certain residuary interest, given in trust for her benefit, should be ascertained and realized.

It seems to me, viewing the will as a whole, that the

testator could not have intended that in "making up" this annual sum of $3,000, there should be taken into account any income, which, apart from that furnished her by the will might come to his widow. I think that the income which the testator had in mind, as that which should be supplemented by the executors with whatever sums might be necessary for "making up" the total to $3,000, was—1st, such income as the residuary trust fund, whereof the wife is made the beneficiary, might yield before that fund could be finally and distinctively set apart for her benefit, and 2nd, such sums, perhaps, as might be paid to her or for her benefit, out of the $5,000 set apart by the first clause of the will. The counsel who represent her interests concedes that this second item may properly be considered in fixing the amount of her income.

. I think that, under all the circumstances of this case, the $4,000, bequeathed in trust for the benefit of the testator's sister, should draw interest from his death. A life estate in the Twenty-seventh street house is devised, in the same clause of the will which bequeathes this legacy. That house was purchased by the decedent as a permanent home for his sister, who is now between 60 and 70 years of age. While the testator lived, she occupied it, rent free, and *at his expense*. He paid the taxes and repairs, and assumed other burdens incident to the occupation of the premises. The will gives this house and the $4,000 to a trustee to receive the income and profits of the same, and directs him, after paying thereout the annual taxes, water rents, assessments, insurance and repairs, to apply the remainder of the income and profits to the use of the sister. It provides, also, that she may, if she so elect,

occupy the premises free of charge while she lives. From the terms of this disposition, it is very probable that one of its purposes was to make provision for meeting the charges and expenses of the property for the period immediately succeeding the testator's death, in the event that, during such period, the beneficiary should choose to occupy the house, or that, in case she otherwise elected, the rent of the premises should yield her little or no income. It seems that the sister has, in fact, continued her residence there, and that the annual income of the fund provided for her use is about equal to the annual current expenses of the premises.

The inquiry as to the circumstances under which a legacy is entitled to draw interest from the death of the testator is an interesting, and in some cases a complicated one, concerning which there is much ingenious learning in the books. After an examination of a multitude of authorities, both English and American, I find no principle or precedent which seems to preclude me, in the present case, in view of the peculiar features to which I have referred, from allowing to the claimant interest on the fund in question since the time of the death of the testator.

Decreed accordingly.