## In the Matter of the Probate of the Last Will and Testament of Asher W. Miner, Deceased.

Under the provision of the Code of Civil Procedure (§ 2545), declaring that a surrogate's decree "shall not be reversed for an error in admitting or rejecting evidence, unless it appears to the appellate court that the exceptant was necessarily prejudiced thereby," an appellate court is at liberty to disregard such an error if it could have had no influence upon the determination of the case.

Unless a residuary bequest is circumscribed by clear expressions and the title of the residuary legatee narrowed by words of unmistakable import, it will, to prevent intestacy, be construed so as to perform the office intended, i. e., to dispose of all the residuary estate.

The holographic will of M., after various devises and bequests, among them a bequest to his wife of all his "household goods, furniture and fixtures and effects," contained a direction to his executors to sell and convey any and all of his real estate, not otherwise disposed of, and convert the same into personalty. The will then provided that after the aforementioned payments shall be made out of the avails of the real and personal estate the balance shall form part of the residuary estate. It was also provided that in case of failure of one of the bequests it shall

form part of the residuary estate. Then followed a clause commencing as follows: "All the rest and residue of my estate both real and personal not heretofore disposed of I give, bequeath and devise as fol lows All my household goods furniture and effects after the decease of myself and wife to." Following this were the names of the beneficiaries, three in number, and the method of distribution. The testator left a large estate; he had no children; the three beneficiaries had been taken into his family at an early age, and had grown up and were recognized as members of his family. *Held*, that the general plan of the will indicated the testator's intent to create a residuary estate, and to effectually dispose of the whole thereof; and so, that the general words of gift carried to the three persons named all of the residuary estate, notwithstanding the presence of the qualifying words, "as follows;" that the testator's intent in specifying the furniture, etc., which had, by the words of a previous clause, been absolutely given to his wife, was simply to limit that gift to a life estate.

Reported below, 72 Hun, 568.

(Argued April 11, 1895; decided May 21, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 3, 1893, which affirmed a judgment entered upon a decree of the surrogate of Allegany county, so far as the same construes the will of Asher W. Miner, deceased.

The facts and the portions of the will, so far as material, are stated in the opinion.

*James C. Smith* for Maria S. Wills and others, appellants. The testator died intestate as to the general residue of his estate. (*Gwillim* v. *Gwillim*, 5 B. & Ad. 122; *Taylor* v. *Wendell*, 4 Bradf. 324; *Jenkins* v. *Van Schaack*, 3 Paige, 242; *Sutherland* v. *Sydnor*, 84 Va. 880; *Stoker* v. *Van Wyck*, 83 id. 724; *Cady* v. *Burn*, 46 N. J. Eq. 131; *Cheeseman* v. *Wilt*, 1 Yeates, 411; *Cole* v. *Richardson*, 2 Salk. 236; *Campbell* v. *Beaumont*, 91 N. Y. 464; *Van Nostrand* v. *Moore*, 52 id. 12; *Cottman* v. *Grace*, 112 id. 299; *Abbott* v. *Middleton*, 7 H. L. Cas. 67, 113; *Howland* v. *Clendenin*, 134 N. Y. 305, 308, 311; *Sweet* v. *Burnett*, 136 id. 204; *In re McClure*, Id. 238; *Scott* v. *Guernsey*, 48 id. 106; *Low* v.

*Harmony*, 72 id. 114 ; *In re Brown*, 93 id. 295, 299, 300 ; *Wood* v. *Mitcham*, 92 id. 375, 379 ; *Murdock* v. *Ward*, 67 id. 387 ; *Keteltas* v. *Keteltas*, 72 id. 312 ; *Doe* v. *Langlande*, 14 East, 370 ; *Wylie* v. *Wylie*, 1 DeG., F. & J 410 ; *Blake* v. *Hawkins*, 98 U. S 315.)   The claim of the respondents that the will, upon its face, gives them the general residue, is untenable.   (*Stuart* v. *Bute*, 11 Ves. 666 ; *Newman* v. *Newman*, 26 Beav. 220 ; *Cross* v. *Wilks*, 35 id. 562 ; *Lamphier* v. *Despard*, 1 C. & L 200 ; *Ennis* v *Smith*, 14 How. [U. S.] 472 ; *Page* v. *Page*, 6 Eng. L. & Eq. 346 ; *Foster* v. *Wybranti*, 11 Ir. Eq. 40 ; *Chalmers* v. *Storil*, 2 V. & B. 222 ; *Dean* v. *Gibson*, L. R. [3 Eq.] 713 ; *King* v. *George*, L. R. [4 Ch. Div.] 435 ; *Atty.-Gen.* v. *Wiltshire*, 16 Sim. Ch. 36 ; *Slingsby* v. *Grainger*, 7 H. of L. 273 ; *Chrystie* v. *Phyfe*, 19 N. Y. 344 ; *Taggart* v. *Murray*, 53 id. 233 ; *Doe* v. *Randing*, 2 B. & A. 441.)   The surrogate erred in receiving, and the General Term in acting, upon extrinsic evidence.   (*Miller* v. *Travers*, 8 Bing. 244 ; *Mann* v. *Mann*, 1 Johns. Ch. 231 ; 14 Johns. 1 ; *Jackson* v. *Sill*, 11 id. 201 ; *Doe* v. *Westlake*, 4 B. & A. 57 ; *Bunner* v. *Storm*, 1 Sandf. Ch. 357 ; *Champlin* v. *Champlin*, 1 Buff. Super. Ct. 355 ; 58 N. Y. 620 ; *Fosdick* v. *Delafield*, 2 Redf. 392 ; *Bradhurst* v. *Field*, 135 N. Y. 564 ; Wigram on Wills, 163 ; *Stimson* v. *Vrooman*, 99 N. Y. 74 ; *Brown* v. *Thorndike*, 15 Pick. 388 ; *M L. Ins. Co.* v. *Hillman*, 145 U. S. 285 ; *Marx* v. *McGlynn*, 88 N. Y. 357 ; *Ennis* v. *Smith*, 14 How. [U. S ] 400.)   A comparison of the will of 1885 with that of 1891 strongly supports the contention of the appellants.   (*Ralph* v. *Carrick*, L. R. [11 Ch. Div.] 873 ; *In re Vowers*, 113 N. Y. 569.)

*Charles B. Wheeler* and *Arthur W. Hickman* for Charles Wheeler and others, appellants.   The testator did not intend by his will to dispose of all his estate ; and the appellants, who are his next of kin, contend that the Surrogate's Court erred in holding that he did not die intestate as to any part of his property, and by its decree awarding all of the residue of his estate, after paying the specific legatees, to the respondents

as legatees named in the fourteenth clause of the will. (*Kerr* v. *Dougherty,* 79 N. Y. 327 , *Lamb* v *Lamb,* 13 id. 234.) In construing wills where the contest is between the heirs or next of kin to the testator and legatees who are strangers to his blood, and the question is presented whether the testator intended to disinherit his heirs, the presumption is that he did not, and this presumption can be overcome only by clear and unequivocal language indicating a plain intent to the contrary. (Schuler on Wills, § 497; *Doe* v. *Dring,* 7 N. & T. 446; *Howland* v. *Clendenin,* 134 N. Y. 311; *Wood* v. *Mitcham,* 92 id. 375; *Quinn* v. *Hardenburg,* 54 id. 83; *Low* v. *Harmony,* 72 id. 480; *Scott* v. *Guernsey,* 48 id. 106; *In re Brown,* 93 id. 295; *Quinn* v. *Hardenburg,* 54 N Y 86; *Schull* v. *Rambo,* 57 Penn. St. 149; *Bacon's Appeal,* Id. 504; *Physick's Appeal,* 50 id 128; *Areson* v. *Areson,* 3 Den. 461.) The intention of the testator cannot be inferred from the extrinsic facts and circumstances. The language of the will may be interpreted as in other written instruments, in the light of surrounding circumstances, but the intention must after all be found in the words of the will. (*Lamb* v. *Lamb,* 131 N. Y. 227; *Riker* v. *Cornwell,* 113 id 115; *Floyd* v. *Carow,* 88 id. 560.) As the terms of the fourteenth clause are expressed in clear and unequivocal language the court cannot add to the same, nor strike out or change the relation which one word bears to another word, or to a sentence. As the testator arranged them, so they must be read without change or altera- tion, or punctuation, so as to destroy their import or meaning as we find them. (*Phillips* v. *Davis,* 92 N. Y. 177; *Stimson* v. *Vrooman,* 99 id. 74; *Tilden* v. *Green,* 130 id. 51.) The prior will of the testator, made in the year 1885, revoked and canceled on making the will now before the court, was not competent proof for any purpose, and should have been rejected by the surrogate. (*Tereta* v *Robbins,* 40 Conn. 271; *Baum* v. *Sewell,* 3 Burr. 1775; *Wilkeson* v. *Adams,* 1 Ves. & B. 445; *Griscom* v *Evans,* 40 N. J. 402; *Mann* v. *Mann,* 1 Johns. Ch. 231; *Bumfield* v. *Wilson,* 78 Ill. 467.) The

property bequeathed by the fourteenth clause of the will is limited to the household goods, furniture and effects, and as to the residue of the testator's estate, not embraced in the previous specific bequests, he died intestate. (*Childs* v. *Wilson*, 2 Jur. 415.) If it is held by this court that the gifts to the donees are limited to such property as is embraced within the descriptive words, "all my household goods, furniture and effects," then they take no more than the household goods, furniture and other property of a like character. (*Benton* v. *Benton*, 63 N. H. 295; *Webster* v. *Wiers*, 51 Conn. 569; *Rawlings* v. *Jennings*, 13 Ves. 39; *Campbell* v. *Preston*, 15 id.; *Blank* v. *Higginson*, 6 Madd. 32; *Hothar* v. *Sutton*, 15 Ves. 310; *Dole* v. *Johnson*, 3 Allen, 364; *Johnson* v. *Goss*, 123 Mass. 433; *Roberts* v. *Kuffin*, 2 Atk. 113; *Ennins* v. *Smith*, 14 How. [U. S.] 412; *Doe* v. *Page*, 6 Eng. L. & Eq. 348; *Foster* v. *Wybrants*, 11 Ir. Eq. 40; *Sanderson* v. *Dobson*, 1 Exch. 141; 1 Jarman on Wills, 566; *Barnes* v. *Patch*, 8 Ves. 604; *Simms* v. *U. S. T. Co.*, 103 N. Y. 478; *Chegary* v. *Mayor, etc.*, 13 id. 220.) Assuming that a construction should be given to the word "effects," as used in the fourteenth clause of the will, so as to dispose of all the testator's property to the legatees named therein and not embraced in the preceding bequests, then, as a matter of law, he did not dispose of the use and income of the same during the life of Mrs. Miner, and the same should be distributed to his next of kin. (*Everitt* v. *Everitt*, 29 N. Y. 40, 75; *Colton* v. *Fox*, 67 id. 348; *Warner* v. *Durant*, 76 id. 136; *Livingston* v. *Green*, 52 id. 118; *Nelson* v. *Russell*, 135 id. 137; *Phelps* v. *Pond*, 23 id. 81; *Doughty* v. *Stillwell*, 1 Bradf. 311; *Haxtun* v. *Corse*, 2 Barb. Ch. 506; *Manice* v. *Manice*, 43 N. Y. 303; *Kilpatrick* v. *Johnson*, 15 id. 323; *Delafield* v. *Shipman*, 103 id. 468; *Radley* v. *Kuhn*, 97 id. 26; *In re Crossman*, 113 id. 503; *Cochrane* v. *Schell*, 140 id. 516.)

*Charles Daniels* and *A. L. Elliott* for respondents. The law permits evidence to be received to aid in ascertaining the

testator's intention, which was a material fact put in contro-
versy by the contestants. (*Couch* v. *Eastman*, 29 W. Va.
784; *Woolton* v. *Redd*, 12 Gratt. 196–205; *Stimson* v. *Vroo-
man*, 99 N. Y. 74–79; *Smith* v. *Burch*, 92 id. 228–231;
*Morris* v. *Sickly*, 133 id. 456; *Griscom* v. *Evans*, 40 N. J.
L. 402, 407; *Kerr* v. *Dougherty*, 79 N. Y. 328; *Gilman's
Estate*, 154 Penn. St. 523, 530; *In re Lee*, 141 N. Y. 58, 60;
*Smith* v. *Bell*, 6 Pet. 68, 75; *Sweet* v *Burnett*, 136 N. Y.
204, 210; *Lawton* v. *Corlies*, 127 id. 100, 104; *Gordon* v.
*Gordon*, 5 Eng. & I. App. 254; *Carpenter* v. *Carpenter*,
14 N. Y. S. R. 284; *Hensman* v. *Fryer*, 2 Eng. Eq.
627; *In re Wolverton*, L. R. [7 Ch. Div.] 197; *Lee* v.
*Simpson*, 134 U. S. 572, 587; *Stagg* v. *Atkinson*, 144
Mass. 564, 569; *M. L. Ins. Co.* v. *Hillman*, 145 U.
S. 285, 295; *Marx* v. *McGlynn*, 88 N. Y. 357; Code
Civ. Pro. § 2445; *Loder* v. *Whelpley*, 111 N. Y. 239.)
The contestants' position is that the testator has disposed of
no more of his property by the fourteenth clause of his will
than his household goods, furniture and effects, while the
position of the proponents is that he intended to, and did by
this clause, dispose of the entire residue of his property not
theretofore disposed of, and that the will itself, and when
read in view of the facts proved by the evidence, very plainly
discloses that design. (*Byrnes* v. *Baer*, 86 N. Y. 210; 2 Redf.
on Wills, 442; *Schult* v. *Moll*, 132 N. Y. 122–127; *Roods*
v. *Watson*, 26 N. Y. S. R. 487; *Delehanty* v. *S. V. O.
Asylum*, 29 id. 324; *Vanderpoel* v. *Leow*, 112 N. Y. 167,
177; *Crichton* v. *Symes*, 3 Atk. 61; *Doe* v. *Langland*, 14
East, 371.) The presumption that the testator intended to
dispose of all his property by his will is confirmed and main-
tained by its general plan, followed by the residuary clause
aptly introduced, and referred to in earlier portions of the
will as the intended receptacle of all his not previously dis-
posed of property. (*Riker* v. *Cornwell*, 113 N. Y. 115; *In
re Bonnett*, Id. 522; *In re Crossman*, Id. 503; *Lamb* v.
*Lamb*, 131 id. 227; *Vernon* v. *Vernon*, 53 id. 351; *Schult* v.
*Moll*, 132 id. 122; *Howland* v. *Clendenin*, 134 id. 305;

*Byrnes* v. *Baer*, 86 id. 210 ; *Thomas* v. *Snyder*, 43 Hun, 14 ; *Phillips* v. *Davies*, 92 N. Y. 199 ; *Saltmarsh* v. *Barrett*, 29 Beav. 474 ; *Roe* v. *Vingut*, 117 N. Y. 204–212 ; *Wager* v. *Wager*, 96 id. 164–172 ; *Lytle* v. *Beveridge*, 58 id. 592 ; *Hall* v. *Priest*, 6 Gray, 18 ; *Hodgson* v. *Jex*, L. R. [2 Ch. Div.] 122 ; *Doe* v. *White*, 1 East, 33 ; *Marquis of Litchfield* v. *Horncastle*, 2 Jur. 610 ; *Franklin* v. *Trout*, 15 East, 391 ; *Dobson* v. *Bowers*, L. R. [5 Eq.] 404 ; *Phillips* v. *Beal*, 25 Beav. 25 ; *Streatfield* v. *Cooper*, 27 id. 338 ; *Campbell* v. *Prescott*, 15 Ves. 499 ; *Pritchard* v. *Pritchard*, L. R [11 Eq.] 231 ; *Smyth* v. *Smyth*, L. R. [8 Ch. Div.] 561 , *Hall* v. *Hall*, L. R. [3 Ch. Div.] 589.) If the word " effects," as it has been used in the fourteenth paragraph of the will, should not receive so broad a construction, it is still evident from the paragraph containing it and other parts of the will, and the relations the testator bore to these three persons as that disclosed by the evidence and a reference to the will of 1885, that he did intend them to be the final recipients of his estate. (3 R. S. [6th ed.] 165 ; *Hope* v. *Brewer*, 48 N. Y. S. R. 834.) Testator intended to dispose of all his residuary estate. (*Wolfe* v. *Van Nostrand*, 2 N. Y. 436 ; *West* v. *Lawday*, 11 Clark, 375 ; *Smyth* v. *Smyth*, L R. [8 Ch. Div.] 561 ; *Dobson* v. *Bowness*, L. R. [5 Eq.] 204 ; *Phillips* v. *Beal*, 25 Beav. 25 ; *Hodgson* v. *Jex*, L. R. [2 Ch. Div.] 122 ; *King* v. *George*, L. R. [4 Ch. Div.] 435 ; *Schult* v. *Moll*, 132 N. Y. 122 ; *Dean* v. *Gibson*, L. R. [3 Eq.] 713 ; *Ellis* v. *Selby*, 7 Sim. 364 ; *Wales* v. *Templeton*, 83 Mich. 177 ; *Riker* v. *Cornwell*, 113 N. Y. 115–127 ; *Lamb* v. *Lamb*, 131 id. 227–235 ; *Roe* v. *Vingut*, 117 id. 204–212 ; *Kerr* v. *Dougherty*, 79 id. 328–349 ; *Stimson* v. *Vrooman*, 99 id. 74–79 ; *Wager* v. *Wager*, 96 id. 164 ; *Bliven* v. *Seymour*, 88 id. 469 ; *Terpening* v. *Skinner*, 29 id. 505 ; *Taggart* v. *Murray*, 53 id. 233 ; *Van Vechten* v. *Keator*, 63 id. 52.) The testator, by the language first employed in the fourteenth paragraph of his will, clearly expressed his purpose to be to give, devise and bequeath all of his estate, both real and personal, and the persons are named to whom he made the devise and bequest.

(*Dean* v. *Gibson*, L. R. [3 Eq.] 717; *Lamb* v. *Eames*, 10 id. 667–672; *Clark* v. *Leupp*, 88 N. Y. 231; *Wales* v. *Templeton*, 83 Mich. 177–179; *Thornhill* v. *Hall*, 2 C. & F. 22–36; *Austin* v. *Oakes*, 117 N. Y. 577–598; *Roseboom* v. *Roseboom*, 81 id. 356–359; *Viele* v. *Keeler*, 129 N. Y. 198, 199; *Patterson* v *Patterson*, 17 Beav. 210.) The intention of the testator to dispose of the entire residue of the estate by the use of this language also appears from its comparison with the will of 1885, which may be referred to and considered for this purpose. (*Ennis* v. *Smith*, 14 How. [U. S.] 400, 420, 421.) It was claimed on the argument in the Surrogate's Court that there were certain earnings, or income, of the estate not in any event disposed of by the will, and that the contestants should be adjudged entitled to that. But whether the gift of the residue took effect on the decease of the testator or of his widow, the result will be the same, and whatever such earnings or income may be, they will incidentally pass to the devisees and owners of the property from which that may issue or arise. (*In re Crossman*, 113 N. Y. 503; *Cochrane* v. *Schell*, 140 id. 516.)

GRAY, J. The will of the deceased was written by himself and made the following provisions : First, he gave to his wife, in lieu of dower and all claims by her as widow, absolutely, the sum of $20,000 and, also, during her life the use of a similar sum and the use of all lands owned by him in the town of Friendship. He gave to her all his "household goods, furniture and fixtures and effects and all his horses, harnesses, carriages, robes and cutters." Second, he gave to each of these respondents the sum of $10,000, less any indebtedness or notes held against them. Third, he gave to a niece the interest on $4,000 during her life Fourth, he gave to a church the sum of $3,000, with directions as to its investment and use, and providing that if the church should be without a pastor for the term of twenty-two months the sum given should "revert to and be a part of his residuary estate." In the fifth, sixth, seventh, eighth, ninth and tenth clauses he

made bequests for educational and charitable objects. In the eleventh clause certain specific articles were bequeathed. In the twelfth clause, he directed his executors to sell and convey any and all of his real estate, not otherwise disposed of, and to convert the same into personal estate ; and he instructed them, in the event of the bequest before mentioned to the church failing, that it should become a part of his residuary estate. In the thirteenth clause, he directed that " after the aforementioned payments shall be made out of the avails of my real and personal estate the balance shall form a part of my residuary estate." The fourteenth clause reads as follows : " All the rest and residue of my estate both real and personal not heretofore disposed of I give bequeath and devise as follows all of my household goods furniture and effects after the decease of myself and wife to Kate M. Wellman Myra E. Corbin and Ella Lockwood to be equally divided between them share and share alike." It is contended on the part of the appellants, who are next of kin to the testator, that he died intestate as to the general residue of his estate. While, on the other hand, the respondents, who are the three persons named in the residuary clause of the will, claim that its provisions give to them whatever belongs to the residuary estate.

The peculiarity of the fourteenth, or residuary, clause, which creates the difficulty in this case, is that the general gift of the residuary estate, with which the clause commences, has an appearance of being restricted and narrowed, so as to limit the interest of the persons named therein to the testator's "household goods, furniture and effects." It is argued that the effect of writing in after the general gift of the residuary estate these words, viz. : " as follows all my household goods furniture and effects after the decease of myself and wife to Kate M. Wellman," &c., was to convert the residuary gift into a specific one of the particular property mentioned. The appellants say that the words of this clause, which precede the enumeration of the testator's household goods, furniture and effects, do not amount to a gift, as no donee is named in them,

and that they are not connected with, but are separate from, the names of the three persons below, by the expression "as follows" and the other intervening words and, that being the case, the name of a donee cannot be supplied by parol. The result is, according to their argument, that, while the opening words of the clause express an intention to proceed to give the residuary estate, the intention is unexecuted, except by what follows and that which follows is a specific gift of the remainder in the household goods, &c., expectant on the death of the testator's wife.

It cannot be disputed but that the testator, in undertaking to draw his own will, has expressed himself in the residuary clause, which, in view of the large estate of which he died seized, was the most important one in his will, in very inartificial and inapt language. I think that this is a case where the intention of the testator to effectually dispose of his residuary estate has very nearly failed of expression; but, with all the difficulties in the way, I think that the language of the clause is adequate to support the construction, which finds the necessary expression of the intention. If some effort is necessary to that end, it is one which it is the duty of the court to make, rather than to permit the result of a substantial intestacy. When we consider carefully the general plan of this will and the circumstances under which it was made, I think we can readily reach the conclusion that it is a case, not where the intention is really unexpressed, nor one where we have to add words to the will, or to supply its omissions, in order to find the intention expressed; but one where the words of gift in the residuary clause were merely inaptly used, or, rather, unfortunately arranged by the testator, and that we should be doing no violence to the rules of law, or of language, if we give that effect to the residuary clause, which the court gave below. If we can see that the inapt, or careless, use of language by the testator has created the difficulty in ascertaining his intention, but, nevertheless, feel certain as to what he meant, from reading the whole instrument in connection with the clause in question, we may subordinate the

language to that meaning. I fully agree with the proposition, advanced for the appellants by their able counsel, that we must gather the intention of the testator from the words he has used and that it must not be a matter of conjecture or speculation on the part of the court. If it were not possible, in the will before us, to reach, with a certainty of conviction, the real intention of the testator and to find it actually expressed, I could not advise the affirmance of this judgment. But I think the testator has said enough to indicate his intention with respect to his residuary estate and its disposition by gift to the persons named. Unless a residuary bequest is circumscribed by clear expressions and the title of a residuary legatee is narrowed by words of unmistakable import, it will be construed to perform the office that it was intended for, viz. : the disposition of all the testator's estate, which remains after effectuating the previous provisions in the will, or which may be added to by lapses, invalid dispositions, or other accident. (*Riker* v. *Cornwell*, 113 N. Y. 115.) The rule of construction requires of the court, in dealing with the language of a residuary gift which is ambiguous, that it should lean in favor of a broad rather than of a restricted construction; for thereby "intestacy is prevented, which, it is reasonable to suppose, testators do not contemplate." (*Lamb* v. *Lamb*, 131 N. Y. 227.) In performing the office of construction, and in order that an apparent intention of the testator shall not be rendered abortive by his inapt use of language, the court may reject words and limitations, supply them, or transpose them, to get at the correct meaning. (*Phillips* v. *Davies*, 92 N. Y. 199.)

Turning to the will and the circumstances under which it was made, we find the testator to have been an active business man, who died at an advanced age; but who, up to the end, was in good health and attending daily to his business pursuits. He had no children and had taken the three persons named in the residuary clause of his will into his family at early ages. Although he never formally adopted them, they grew up and were recognized as members of his family and

the relations between them were at all times of an affectionate nature. The relations between him and his brothers and nephews and nieces were, also, of a more or less affectionate and pleasant nature. The ties of affection between him and the three women, who had grown up from childhood as members of his household, must have been strong enough to warrant him in feeling towards them as a parent might towards his children, when making testamentary disposition of his property. I refer to these circumstances, not so much because they were essential to be shown in aid of the construction of this will, but as tending to reinforce the apparent intention to make them residuary legatees. The general plan of the will itself shows that the testator had in mind to constitute a residuary fund, which might be swelled in its proportions by events affecting prior bequests. For instance, in the sixth clause of the will there is the provision that, if the bequest to the church should fail, it should become a part of his residuary estate. A similar provision again appears in the twelfth clause of the will. In the thirteenth clause he provides that the balance remaining after payment of legacies shall form a part of his residuary estate. We then have the fourteenth, or residuary, clause in question; the very existence of which indicates a purpose on the part of the testator to make a disposition of his residuary estate and, unless there is something prohibitive, or insuperably defective in it, the presumption should justly obtain from its presence, as also from the very plan of the will, that an effectual disposition had been made of whatever constituted the testator's residuary estate. Having made certain bequests of his property and having provided with reference to a residuary estate, the testator proceeds to say what shall be done with it and his language is " all the rest and residue of my estate both real and personal not heretofore disposed of I give, bequeath and devise as follows," &c. That language certainly is explicit and general enough to carry whatever composed his residuary estate to the donees named; and were it not for the words which intervene between that general gift

and the names of the donees there could, of course, be no
doubt with respect to their rights.   But is it true that the
doubt which is raised is other than superficial and that it is
not removable upon some consideration of the matter?   Shall
we give the effect to the words "as follows," which shall
restrict and cut down the general gift of the testator's estate
to the specific articles mentioned and which are of compara-
tively small value?_ Is there any reason for supposing that
the testator did not mean, in making the general gift of his
residuary estate, that the three women named in that clause
should not receive it?   Can we justly say that, having in his
will anticipated the existence of a residuary estate and then
having expressed the intention to give it, that he has left the
intention unexecuted for failure to name donees?   I think not
and I think that we should hold that the general words of gift
carried to the three women, named as residuary legatees, all
of the residuary estate; notwithstanding the presence of the
qualifying words "as follows."   The testator was mindful,
when drawing the fourteenth clause, of the former provision
in his will made in favor of his wife; which, apparently, gave
absolutely to her the household goods, furniture and effects.
Intending, doubtless, that her enjoyment of them should only
be for her life, he, parenthetically, to use the expression of the
respondent's counsel, effects that limitation upon his previous
gift, by interjecting, in the general gift of the residuary estate
to the legatees named, the words in question and which have
caused the difficulty here.   Having completed his will, it is
evident that, out of abundant caution and because he believed
it to be necessary, he inserted these words of limitation which
would represent his purpose and create a life use in the
specific effects mentioned.

   This construction of the fourteenth clause seems to us, in
every view of the matter, not only the just one to make, but
the reasonable and necessary one upon the very language of
the clause, read in connection with the general scheme of the
will.   I may, also, observe that the absence of all punctuation
leaves us at greater liberty to make that arrangement of

the words, parenthetical or otherwise, which will subserve the apparent purpose of the testator.

Counsel for the respondent cites us to several cases in the English courts, which show that a general and comprehensive testamentary gift of property will not be cut down by the enumeration of particular items. In *Fisher* v. *Hepburn* (14 Beav. 626), the will gave "the rest, residue and remainder of my estate and effects, whatsoever and wheresoever;" and the gift was held not to be restricted by the enumeration, immediately following, of "canal shares, plate, linen, china and furniture." In *King* v. *George* (L. R. 4 Ch. Div. 435), the testatrix bequeathed "to A. K. George all that I have power over, namely, plate, linen, china, pictures, jewelry, lace, the half of all valued to be given to Herbert George, son of Frederick George." Vice-Chancellor MALINS held that the bequest was not limited to the articles specifically bequeathed and he uses this language : "I cannot help thinking that the doctrine has been settled that where a testator gives his property generally by the words 'all my property,' or 'all my estate,' or 'all that I have power over,' as in this case where he uses words sufficient to pass everything, and then proceeds to enumerate particulars, — it is now, I think, pretty well settled that an enumeration of particulars does not abridge or cut down the effect of the general words." The appellants' counsel seeks to distinguish the decision in *Fisher* v. *Hepburn* by the suggestion that, as the articles there were named in immediate connection with the gift of the rest and residue, their enumeration could not be regarded as an attempt to limit the gift to them; and in *King* v. *George* he suggests the distinction that an intent to give the entire residue to the legatee named was unequivocally expressed by words of direct gift of the residue to such donee, before the enumerating words were resorted to. I am inclined to think, however, that the distinctions suggested are not substantial; for we have in the clause of the will before us an absolute gift of all the rest and residue of the testator's estate, which is made to persons named therein; unless we

allow to the words " as follows " the restrictive effect insisted
upon by the appellants.   In the case of *Childs* v. *Wilson*
(2 Jur. 415), to which we are referred by the appellants'
counsel, in his argument upon the effect of the expression " as
follows," there was no general residuary gift.   In that case
the word " namely " followed after a gift of all the testator's
household furniture to his wife and after the gift to trustees
for his wife and child of all his " money, goods and chattels
whatsoever, except my household furniture aforesaid ; " and
because, after " namely," he proceeded to give to his wife
fifty pounds a year for her life and to his daughter five hun-
dred pounds when she attained twenty-one " and in case my
wife, Mary Brown, shall be pregnant at my death, the child
to have five hundred pounds and my wife twenty-five pounds
per annum, instead of fifty pounds as aforesaid," it was held
that there was an intestacy as to the rest of the estate not
comprehended within those amounts.   But there was some
reason in that case for attaching to the word " namely " the
restricted meaning, because the bequests were in fact restricted
by naming precise amounts.

Without further discussion of the great number of cases,
which have been cited as bearing more or less upon the ques-
tion here, I think we are warranted in giving that construc-
tion to the residuary gift, contained in the fourteenth clause of
this will, which will be in harmony with the plan of the whole
will and which will effectuate that evident intention, which
the words of the clause suggest and which we think they have,
although most inartificially, expressed.   As I have previously
suggested, the case presents no inconsiderable difficulty, grow-
ing out of the fact that the testator has undertaken to make
his own will and, in doing so, has been unfortunate in the
arrangement of words.   But the result of a consideration of
the whole will leaves the conviction that the testator has not
failed to express his intention to give the whole of his residu-
ary estate to the three persons named.

The proponents of this will offered extrinsic evidence to
show the motives and the intention of the testator ; which con-

sisted in the introduction of a will, made by him some few years previous to the present will, and in considerable testimony as to the relations which subsisted between the testator and the respondents.   It may be a matter of doubt as to the relevancy and materiality of very much of this evidence; inasmuch as the language of the will was not, perhaps, sufficiently ambiguous to warrant it.   The object, of course, of introducing the testimony with respect to the relations subsisting between the testator and the respondents, was to place the court, as nearly as possible, in the position of the testator when he made his will; and that evidence to that effect is generally admissible cannot be denied.   It may be that as to some of the evidence here it exceeded the proper limits; but no prejudice has resulted and without it the court could have arrived at the conclusion it did.   As to the previous will which was introduced in evidence, the object was to show that the same persons were intended to be benefited by the present will, who were the principal beneficiaries in the prior will.   It is sufficiently plain from a comparison of the two wills and the literal identity of their language in important provisions, that the prior will must have been before the testator and furnished the model for drawing the present will.   In that view of the case, perhaps, it cannot be said that there was error in receiving in evidence the former will to aid in the construction of the present one.   But, whatever doubt there may be as to the admissibility of such evidence, and, in my opinion, there is considerable, it did not constitute error which calls for a reversal at our hands; for the reason that, in its absence, the same result must have been reached.   Under the provisions of section 2545 of the Code of Civil Procedure, a surrogate's decree shall not be reversed for an error in admitting or rejecting evidence, unless it appears to the appellate court that the exceptant was necessarily prejudiced thereby.   The effect of that section is to leave the appellate court at liberty to disregard the error, if it could have had no influence upon the determination of the case.   If the judgment is clearly right,

notwithstanding the error, it is no ground for reversal.  (*Loder v. Whelpley*, 111 N. Y. 239, 246.)

It results from the views which I have expressed, that the judgment below should be affirmed, with costs.

All concur, except HAIGHT, J., not sitting.

Judgment affirmed.